James **FRAZIER**, Appellant,

v.

The **STATE** of Oklahoma, Appellee.

No. F–76–78.

Court of Criminal Appeals of Oklahoma.

June 8, 1976.

Rehearing Denied June 25, 1976.

Whit Pate, Poteau, for appellant.

Larry Derryberry, Atty. Gen., Robert L. McDonald, Asst. Atty. Gen., Joe Mark Elkouri, Legal Intern, for appellee.

OPINION

BUSSEY, Judge:

Appellant, James Frazier, hereinafter referred to as defendant, was charged and tried in the District Court, LeFlore County, Case No. CRF–75–114, for the offense of Manslaughter in the First Degree, and was convicted of the lesser offense of Negligent Homicide, in violation of 47 O.S. 11–903. His punishment was fixed at a term of six (6) months in the LeFlore County jail and he was assessed a fine in the amount of One Hundred Fifty ($150.00) Dollars. From said judgment and sentence, the defendant has perfected a timely appeal to this Court.

At the trial Gary Crain testified that he was employed by the Oklahoma Department of Public Safety as a Highway Patrol Officer. On June 30, 1975, while on duty, he was dispatched to the scene of an accident located two miles east of Spiro, Oklahoma, on State Highway 271. Upon his arrival at the scene, he observed two vehicles off the north side of the highway which had been involved in the accident. He further observed the deceased, Jewel Foudray, inside a 1973 Plymouth and her husband, Mr. Foudray, lying beside the 1973 Plymouth. The deceased was lying behind the steering wheel on her right side and appeared to Officer Crain to be already dead. There appeared to be blood and "blue marks" on her head, apparently a result of the accident. During his investigation, Officer Crain determined that the defendant, who he identified in court, was the driver of the other vehicle. After the persons involved in the accident were transported to the hospital, Officer Crain made an investigation of the scene of the accident to determine the cause. Based on Of-

ficer Crain's experience, training and his investigation at the scene, it was his opinion that the deceased's vehicle was attempting to make a left turn into a private drive and defendant's vehicle was attempting to pass the deceased's vehicle at the time of the impact.

Officer Crain further testified that visibility on the day of the accident was excellent and that along the roadway where the accident occurred there was a no passing zone for eastbound traffic, the direction both cars were traveling, and that in his opinion the defendant's vehicle was traveling at a speed of 84 miles per hour.

Dr. W. DeWayne Jones testified he was a medical doctor and was employed at Sparks Hospital in Ft. Smith, Arkansas. On June 30, 1975, he examined one Jewel Foudray in the emergency room of Sparks Hospital. Mrs. Foudray had no pulse, no heart sounds, no respiration, no blood pressure, no corneal reflexes, and was pronounced dead on arrival at Sparks Hospital. Dr. Jones further testified that Mrs. Foudray died from head injuries.

Officer Gary Crain was recalled to the stand and testified that the speed limit where the accident occurred was 55 miles per hour. He further testified that from his calculations and the facts surrounding the accident, it was his opinion that the defendant's vehicle struck the deceased's vehicle in the driver's door, pushing the center post toward the driver.

James McKinney testified he was employed by the Oklahoma Department of Public Safety as a Highway Patrol Trooper. On June 30, 1975, he was at the scene of an accident east of Spiro, Oklahoma. Officer McKinney further testified that on July 1, 1975, he talked to the defendant. After advising the defendant of his Miranda rights the defendant stated that he was the driver of one of the automobiles involved in the accident on June 30, 1975, and that he was traveling at a speed of 70 to 75 miles per hour.

Glen Underwood testified that he owned a gift shop located one and one-half miles east of Spiro, Oklahoma. On June 30, 1975, he heard the sound of a collision and stepped out of his shop and observed the defendant standing in front of his automobile. He went to the other automobile and there observed two people in the vehicle. He was unable to open the driver's door, but was able to open the passenger door and remove the passenger (Mr. Foudray). The witness' father then entered the vehicle and attempted to hold the deceased head out of her own blood. Underwood observed the signal light and the warning buzzer flashing and making a "racket" and at that time he reached through the window and removed the keys, which he later gave to the Highway Patrolman. He finally testified that he observed the turn indicator to be in the left position signaling a left turn.

The State then rested.

The defendant took the stand in his own defense and testified that he lived in Fort Coffee, which is located approximately seven miles from Spiro. On June 30, 1975, he was traveling east on State Highway 271 and he noticed a car in front of him, traveling in the same direction at a speed of approximately 35 to 40 miles per hour. He made a determination to pass the vehicle approximately one city block before entering a no passing zone. He increased his speed to approximately 70 to 75 miles per hour and proceeded to pass the vehicle in front of him. He then observed the left turn signal come on and the vehicle turned directly in front of him. He stated that there was nothing he could do to prevent the accident.

On cross-examination the defendant testified that on the day of the accident he had been in Spiro, Oklahoma. He met four friends at a car wash and before he finished washing his car his friends left. Just before the accident, he passed Allen Rogers' car, one of his friends who had been at the car wash, and who had left before the defendant. Allen Rogers arrived on the

scene of the accident immediately after it happened. The defendant was traveling approximately 55 to 60 miles per hour before he proceeded to pass the deceased's vehicle and he was positive that there were no vehicles coming in the westbound lane.

The defense then rested.

In rebuttal the State called Officer James McKinney who testified that on the day of the accident he observed a 1974 black Torino automobile at the scene of the accident and was told by the defendant that it belonged to one Allen Rogers.

Officer Gary Crain was also called in rebuttal and testified that he observed a black Torino automobile at the accident scene. He later observed the same vehicle at a car wash in Pocola, Oklahoma. The vehicle had glass embedded in the weather stripping around the door and in the tires on the driver's side of the automobile.

Both the State and defense then rested.

■ Defendant's sole assignment of error asserts that the trial court erred in accepting the jury's verdict without the jury assessing his punishment.

The record reveals that after being instructed the jury was sent out to deliberate and thereafter returned to the courtroom and announced that they had not reached a verdict. The jury was then allowed to go eat dinner. After the jury had eaten they were sent back for further deliberation. Thereafter, they returned to the courtroom and announced they had reached a verdict as to the guilt of the defendant, but not the punishment. At this time the court read the verdict and accepted it over the objection of the defendant. Thereafter, on October 3, 1975, the court sentenced the defendant to six months in the County jail and assessed a fine of $150.00.

The defendant argues that the action of the trial court violates the rule announced by this Court in the case of *Shanahan v. State*, Okl.Cr., 354 P.2d 780 (1960), wherein this Court held, in the seventh paragraph to the Syllabus:

"In cases where the jury reaches a verdict of guilty and cannot agree upon the punishment and so reports to the court, Title 22 O.S.A. § 927 becomes applicable and the Court shall require the jury to deliberate further after a further instruction that if they are unable to agree to so state in their verdict and leave the punishment to be assessed by the court."

It is our opinion that *Shanahan,* supra, is distinguishable from the instant case. In the *Shanahan* case the defendant requested the jury assess his punishment and offered an instruction which the trial court refused to give. In the instant case, no request was made by the defendant to have the jury assess his punishment.

■ This Court has held that the rule announced in the *Shanahan* case is only applicable in cases where a request is made by the defendant for the jury to assess his punishment, and when such request is made it is error not to follow the rule as enunciated in *Shanahan,* supra. However, if no request is made then the court may give the following instruction:

"Should you find from the evidence under instructions and beyond a reasonable doubt, that the defendant is guilty, so state in your verdict, you may then assess the punishment therefore within the provisions of the law set out herein or *you may leave the punishment to be assessed by the court.*"   (Emphasis ours)

This would still be in compliance with 22 O.S.1971, § 926. See, *Thomas v. State*, Okl. Cr., 361 P.2d 1106 (1961). It is therefore our opinion that as no request was made for the jury to assess defendant's punishment in the instant case that the trial court's action of accepting the verdict, without the jury assessing punishment, was not error.

Finding no merit to the assignment of error presented, it is our opinion that the judgment and sentence appealed from should be and the same is, hereby, *AFFIRMED*.

BRETT, P. J., and BLISS, J., concur.